CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 15 2011

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DONNA SUE BRADBERRY, | ) | |
| | ) | Civil Action No. 7:11-cv-00235 |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: Judge James C. Turk |
| Commissioner of Social Security, | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff Donna Sue Bradberry ("Bradberry") brought this action for review of Defendant Michael J. Astrue's ("the Commissioner") final decision denying her claim for disability insurance benefits ("DIB") under the Social Security Act ("the Act"), as amended 42 U.S.C. §§ 416(i) and 423 (2006). Jurisdiction of this Court is pursuant to 42 U.S.C. § 405(g) (2006). Both Bradberry and the Commissioner filed motions for Summary Judgment. Oral argument was heard on November 28, 2011. The issue before the Court is whether substantial evidence supports the Commissioner's final decision that Plaintiff can perform a limited range of light exertional work. For the reasons stated below, the Court remands this case back to the Commissioner pursuant to 42 U.S.C. § 405(g) for further consideration. Accordingly, the Commissioner's Motion for Summary Judgment is **DENIED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

I. Standard of Review

When reviewing the Commissioner's final decision, the Court's review is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether they were reached through the application of the correct legal standards. See 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Accordingly, a reviewing court

may not substitute its judgment for that of the Commissioner, but instead must defer to the Commissioner's determinations if they are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); 42 U.S.C. § 405(g). The Commissioner's finding of any fact is conclusive provided it is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401. Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but it is "more than a mere scintilla of evidence [though] somewhat less than a preponderance," Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

## II. Procedural History and Factual Background

Bradberry was born on April 7, 1958, and was 48 at the time she alleges she became disabled. (R. 18, 174). Bradberry completed high school and has taken some community college classes. (R. 30). Prior to her alleged disability, Bradberry was employed by Federal Mogul for approximately 27 years. (R. 30). While there she worked as an inspector. Id. Bradberry alleges that she became disabled from all forms of substantial gainful employment on September 15, 2006, but that she was having some "fairly significant problems" throughout 2006. (R. 18, 31). Bradberry alleges her disability continues to this day and is the result of fibromyalgia, high blood pressure, and anxiety. (R. 31-2). Bradberry was initially unable to work as a result of uncontrolled high blood pressure that resulted in dizziness and put Bradberry at risk of falling. (R. 31).[1]

Bradberry filed an application for DIB on January 31, 2007. (R.16). Her claims were denied on initial consideration and on reconsideration. Thereafter, Bradberry requested and received a hearing and review before an Administrative Law Judge ("ALJ"). In an opinion dated

---

[1] Subsequent evaluations indicate that Plaintiff's blood pressure is largely controlled by medication. (R. 353-54).

2

April 16, 2009, the ALJ denied Bradberry's request for benefits and determined that she was not disabled. Specifically, the ALJ determined that Bradberry had several impairments that met the definition of a severe impairment under 20 C.F.R. §§ 404.1520(c): obesity; hypothyroidism; hypertension; fibromyalgia and back pain; and anxiety. (R. 18). However, the ALJ found that none of these impairments met or was medically equal to a listed impairment, as detailed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18). Based on her review of the record, the ALJ determined that Bradberry had the residual functional capacity ("RFC") to:

> [L]ift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk for 6 hours out of 8, and sit for 6 out of 8. Claimant is limited to tasks requiring no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling. She cannot perform overhead lifting. She needs the ability to make brief in-place postural changes between sitting and standing, without leaving her workstation, approximately 6 times per day. She cannot climb ladders, ropes or scaffolds, or work around hazardous machinery or at unprotected heights. Due to a moderate reduction in her ability to maintain concentration, persistence or pace, claimant is limited to simple, non-complex tasks.

(R. 20). Based on this RFC the ALJ found that although Bradberry could not perform any of her past work there were jobs such as cashier, packer, and assembler that Bradberry could perform. (R. 26). The Commissioner adopted the ALJ's opinion, and Bradberry now appeals.[2]

### III. Discussion

Plaintiff makes three main arguments in support of her case. She first argues that the ALJ erred by failing to accord adequate weight to the opinion of Plaintiff's treating physician, Dr. Joseph Lemmer, M.D. Second, Plaintiff argues that the ALJ did not follow the Social Security Administration's guidance about how to assess Plaintiff's compliance with prescribed

---

[2] Bradberry has met the insured status requirements of the Act at all relevant times covered by the Commissioner's final decision. 42 U.S.C. §§ 416(i) & 423(a).

treatment for obesity. See Social Security Ruling, SSR 02-1p; Titles II and XVI: Evaluation of Obesity, 67 Fed. Reg. 57859 (Sept. 12, 2002) (hereinafter SSR 02-1p). Finally, Plaintiff argues that the ALJ failed to properly consider Plaintiff's mental impairments. After reviewing the record in this case, the Court finds that Plaintiff's arguments with regard to the ALJ's treatment of Dr. Lemmer's opinion and the ALJ's comments regarding Plaintiff's failure to follow prescribed treatment for obesity warrant remand.

A. **The ALJ Did Not Afford Appropriate Weight to the Opinion of Dr. Lemmer.**

In arguing that the ALJ failed to afford appropriate weight to the opinion of Dr. Lemmer, Plaintiff challenges several aspects of the ALJ's decision, including (1) the ALJ's rejection of Dr. Lemmer's residual functional capacity ("RFC") assessment because it was completed through the use of a checklist form and (2) the failure to consider Attendance Records from Federal Mogul indicating that Plaintiff took medical leave in the months preceding her disability onset date. As explained in detail below, while the Court is not convinced that the ALJ's treatment of Dr. Lemmer's RFC assessment was erroneous, the Court finds that the failure to consider the Attendance Record requires remand.

Plaintiff argues that the logic behind the ALJ's decision to give little weight to the RFC assessment – that "a checklist of residual function capacity is in itself entitled to little weight when not accompanied by medical examinations or reports of clinical findings supporting the opinion," (R. 24), – would require the ALJ to afford similarly little weight to the opinions prepared by the State reviewing physicians/psychologists who also use checklists to provide their opinions, upon which the ALJ placed weight. (Pl.'s Br. at 4). However, as the Commissioner correctly notes, the issue is not whether a checklist is used to provide an opinion, but whether the opinion, rendered by checklist, is appropriately supported. (D.'s Br. at 14); 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion,

4

particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); Craig v. Charter, 76 F.3d 585, 589 (4th Cir. 1996) ("if a physician's opinion is not supported by clinical evidence ... it should be accorded significantly less weight"). The RFC assessments completed by the State reviewing physicians, Drs. Phillips and Duckwall, upon which the ALJ placed weight, (R. 23), included written explanations of their checklist opinions. (R. 337, 373-4). These written explanations provide context for the checklist evaluation and indicate what objective medical evidence supports the checklist evaluation. Id. However, the RFC assessment provided by Dr. Lemmer did not include a written explanation. (R. 496, 498).[3] Thus, the ALJ did not err by discounting Dr. Lemmer's RFC assessment.

Next, Plaintiff argues that the ALJ made a factual error regarding the speed of Plaintiff's decline from being capable of full-time employment to requiring DIB. When reviewing Plaintiff's decline the ALJ stated:

> [Plaintiff] worked 6 or 7 days per week, often working overtime. Her shifts were between 8 and 12 hours long, and it was common for her to work 60 hours or more per week.... However, it is unreasonable to believe that [Plaintiff] was capable of working 6 or 7 days per week and over 60 hours per week, and then became immediately unable to work a traditional 40 hour work week.... Other than a spell of high blood pressure, which stabilized, the medical evidence does not show a significant worsening of condition which could have rendered claimant totally unable to work ....

(R. 21). The ALJ further stated that Plaintiff "sought treatment from Joseph Lemmer, M.D. for such pain beginning in approximately April of 2006, and was able to continue working through September." (R. 22). However, the ALJ did note that Bradberry requested and was granted a

---

[3] To the extent that the Temporary Assistance for Needy Families questionnaire bears on Plaintiff's RFC, the Court notes that Dr. Lemmer did not support his checklist evaluation with a written explanation. (R. 458-61).

5

medical leave of absence by Dr. Lemmer from late September 2006 until approximately April 2007. (R. 22-23).

Nonetheless, it does not appear that the ALJ considered all the available evidence when assessing Plaintiff's decline. As the Fourth Circuit has held, the ALJ is not permitted to select and discuss only that evidence that supports his or her conclusion. Hines v. Barnhart, 453 F.3d 559, 566 (4th Cir. 2006). Although Plaintiff submitted additional evidence,[4] of the dates on which Plaintiff was absent from work in the months preceding her disability onset date, even without the benefit of these records there was evidence available to the ALJ in Dr. Lemmer's treatment notes that indicated medical leaves of absence had been granted as early as April 11, 2006. The record indicates that medical leaves of absence were granted during Plaintiff's visits in April 2006, May 2006, September 2006, October 2006, December 2006, February 2007, and March 2007. (R. 409, 412, 418, 427, 429, 435, 440). This evidence plainly contradicts the ALJ's statement that Bradberry went from working 60 hours per week to "immediately" being unable to work a 40 hour week. Significantly, the ALJ's finding regarding the lack of evidence to support Plaintiff's worsening medical condition appears to have colored the ALJ's overall opinion of the Plaintiff's credibility. (R. 21) ("claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible"); (R. 23) ("If claimant truly suffers from disabling joint and back pain, it is reasonable to expect her to consistently complain of such symptoms. The credibility of her allegations is diminished ...."); (R. 24) ("the above residual functional capacity is supported by ... claimant's ability to work over 60 hours per week with the same medical conditions she now claims are disabling."). Accordingly, this Court finds

---

[4] The Attendance Records document Plaintiff's work attendance between 1/1/06 and 12/31/06 and specify the exact dates Plaintiff missed. Plaintiff states they were submitted to the Appeals Council by way of a letter brief, but are not reflected in the record. Accordingly, Plaintiff's counsel included the Attendance Record as an attachment to Bradberry's motion for summary judgment.

that remand is appropriate for further consideration, and development if necessary, of the records submitted to the Appeals Council and Dr. Lemmer's treatment notes regarding Plaintiff's absences in the months immediately preceding her disability onset date.

**B.     The ALJ Failed to Follow SSR 02-1p Regarding Plaintiff's Compliance with Prescribed Treatment for Obesity.**

The Court finds that the ALJ failed to apply the appropriate legal standard, specified in SSR 02-1p, when evaluating Plaintiff's obesity. This Court's ruling does not indicate that the ALJ entirely failed to consider Bradberry's obesity; rather the ALJ erred in evaluating how Plaintiff's obesity affected her RFC.[5]

Although the general rule is that "[i]n order to get benefits, you must follow treatment prescribed by your physician" and "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled," 20 C.F.R. § 404.1530, the Social Security Administration has issued guidance stating "[w]e will rarely use 'failure to follow prescribed treatment' for obesity to deny or cease benefits," SSR 02-1p, 67 Fed. Reg. at 57864. Moreover, the Social Security Administration has stated that "[a] treating source's statement that [an] individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment." Id.

Despite this guidance, the ALJ found that "a finding of not disabled is appropriate" because Bradberry has "not followed the repeated recommendations of her physicians to exercise regularly and follow a heart healthy diet," which "under the regulations, a claimant must follow the prescribed treatment of a physician if this treatment can restore the ability to work." (R. 22). The ALJ further opined that "[s]uch failure to exercise, diet and lose weight leads to the

---

[5] The ALJ appropriately found that obesity qualified as a severe impairment and appropriately considered whether Plaintiff's obesity met or equaled the requirements of a listed impairment.

7

conclusion that the claimant's discomfiture is not wholly disabling since, having the means to alleviate symptoms, she failed to utilize those means." Id. Although the Commissioner argues that the ALJ accommodated the limitations imposed by Plaintiff's obesity in her RFC assessment by limiting Plaintiff to light work and no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling, (D.'s Br. at 16), the Court is not convinced. The ALJ's decision indicates that the ALJ gave little weight, if any, to Plaintiff's obesity in formulating her RFC. (R. 22, 24). Moreover, the limitations on Plaintiff's RFC are consistent with Plaintiff's other symptoms, severe joint and back pain. Accordingly, because the ALJ misapplied SSR 02-1p this Court remands the case for consideration of the effect, if any, of Plaintiff's obesity on her RFC.

### C. The ALJ Properly Evaluated Plaintiff's Mental Impairments.

Bradberry argues that the ALJ erred by failing to order a consultative psychological evaluation in light of the ALJ's finding that although Plaintiff suffered from severe anxiety it did not meet or equal a listed impairment. (Pl. Br. at 14-5); (R. 18-9). In support of this contention Plaintiff cites SSR 96-7p, which states:

> The adjudicator must develop evidence regarding the possibility of a medically determinable mental impairment when the record contains information to suggest that such impairment exists, and the individual alleges pain or other symptoms, but the medical signs and laboratory findings do not substantiate any physical impairment(s) capable of producing the pain or other symptoms.

Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 34484 n.3 (July 2, 1996). As an initial matter the Court notes that this guidance applies to the ALJ's analysis of whether the Plaintiff suffers from a medically determinable impairment and whether that impairment is severe. 20 C.F.R. § 404.1520(a)(ii). However, Plaintiff's challenge concerns whether the impairment meets or

8

equals a listed impairment. 20 C.F.R. § 404.1520(a)(iii). Thus, the guidance cited by Plaintiff has little bearing on whether the ALJ's decision, that Plaintiff's anxiety did not meet or equal a listed impairment, is supported by substantial evidence.

After review of the record, this Court finds that the ALJ had sufficient evidence without the aid of a consultative exam to make the determination that Plaintiff's anxiety did not meet or equal a listed impairment. The decision to order a consultative examination is discretionary, 20 C.F.R. § 1519(a), and depends on "whether the record contain[s] sufficient medical evidence for the [Commissioner] to make an informed decision as to [claimant's] alleged mental impairment," without the need for a consultative psychological examination. Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989). To meet or equal a listed impairment, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation. 20 C.F.R. Part 404, Subpart P, Appendix 1.

In analyzing whether Plaintiff's mental impairment met or equaled a listed impairment the ALJ considered Plaintiff's own statements about her daily activities, (R. 53-6), Plaintiff's lack of testimony about her mental impairment, (R. 63-4), treatment notes from Dr. Lemmer noting her symptoms of anxiety and prescribing treatment, (R. 401, 412, 415, 421, 424, 427-29, 432), and the reports of the State reviewing psychologists, (R. 339-351, 355-367). First, Bradberry's statements about her daily activities indicate that she did not have a marked restriction of her daily activities or in her social functioning. Bradberry testified that she is able to look after her daughter independently, walks daily, reads for pleasure, visits the public library, and attends church. (R. 53-6). Second, although Bradberry complained of anxiety, she did not

allege anxiety in her application for disability benefits or provide any testimony about how her anxiety affects her abilities during the hearing before the ALJ. (R. 18, 61). Indeed, when asked "Is there anything you want to say about your condition and why you can't work that we haven't talked about?" Plaintiff testified solely about her physical impairments; she did not raise her issues with anxiety. (R. 63-4).[6] Third, the ALJ had the benefit of notes from Plaintiff's treating physician, Dr. Lemmer, regarding her anxiety. (R. 401, 412, 415, 421, 424, 427-29, 432). Finally, the ALJ considered the opinions of the two State reviewing psychologists when determining whether Bradberry's anxiety met or equaled a listed impairment. Dr. Leizer determined that although Bradberry suffered from a medically determinable impairment, anxiety, (R. 344), it was not severe and Bradberry only had only mild limitations with regard to restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace, (R. 349). Similarly, Dr. Tenison, found that Bradberry suffered from anxiety, but that it was not severe. (R. 360). Dr. Tenison further opined that Bradberry had no limitations with regard to restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. (R. 365). Accordingly, the ALJ's finding that Bradberry's anxiety did not meet or equal a listed impairment is supported by substantial evidence and the ALJ did not err by failing to order a consultative exam.

---

[6] Other Circuits have held that 'when an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits." Glenn v. Secretary of Health and Human Services, 814 F.2d 387, 391 (7th Cir. 1987).

10

## IV. Conclusion

After review of the record, this Court finds that the case should be remanded to the Commissioner for further consideration consistent with this Memorandum Opinion. Accordingly, this Court **DENIES** the Commissioner's Motion for Summary Judgment and **DENIES** the Plaintiff's Motion for Summary Judgment. An appropriate order shall this day issue.

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to all counsel of record.

ENTER: This 15th day of December, 2011

/s/ James C. Turk
Senior United States District Judge